UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DR. JOHN FRAICHE AND DONNA
D. FRAICHE

VERSUS

SONITROL OF BATON ROUGE, ET AL

CIVIL ACTION

NO. 08-392-JJB-DLD

**RULING ON DEFENDANT'S MOTION TO STRIKE**

This matter is before the Court on Defendant Sonitrol Corporation's motion (doc. 84) to strike portions of Plaintiffs' summary judgment evidence. Plaintiffs have filed an opposition (doc. 93). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332.

On January 7, 2008, Plaintiffs Dr. John Fraiche and Donna D. Fraiche's Baton Rouge home was burglarized while the couple was out town. At the time of the burglary, Plaintiffs had a contract with Defendant Sonitrol Corporation ("Sonitrol") to provide alarm monitoring services (doc. 74, exhibit A). On the night of the burglary, Sonitrol's alarm system detected sounds coming from within Plaintiffs' home and alerted Sonitrol operator Vickie Bryant ("Bryant")—a process called audio activation.[1] Over the course of thirty minutes, the system transmitted five separate audio activations and also detected the sounds of breaking glass within the home (*id.*, p. 125). However, Bryant concluded that

---

[1] When an audio activation occurs, Sonitrol operators monitor the sounds coming from the home to determine if they are the result of threatening conduct and require taking further action, or are simply the result of other non-threatening causes such as a pet or inclement weather (doc. 74, exhibit B, pp. 116-17).

1

Plaintiffs' home was not being burglarized and did not contact Plaintiffs or law enforcement. As a result, Plaintiffs had between $200,000 and $300,000 in jewelry stolen from their home (doc. 77, exhibit G).

On May 21, 2008, Plaintiffs filed suit against Defendant asserting that Defendant is liable for, among other things, gross negligence and breach of contract (doc. 1). On September 30, 2010, Defendant filed its motion (doc. 74) for summary judgment. On October 21, 2010, Plaintiffs filed their motion (doc. 77) in opposition. Plaintiff's opposition was supported by, among other documents, (1) the deposition of Sally Wright ("Wright") and accompanying exhibits[2]; (2) deposition testimony, an affidavit and expert reports of Don Connor ("Connor")[3]; and (3) the affidavit of John Fraiche ("Fraiche")[4]. On November 19, 2010, Defendant filed its motion (doc. 93) to strike these portions of Plaintiffs' summary judgment evidence.

**Wright deposition and supporting documents**

Defendants assert that Wright's deposition testimony is not admissible because (1) it is not relevant; (2) Wright has no personal knowledge of the facts contained in the accompanying documents; (3) the testimony relates to evidence

---

[2] Wright is General Manager of the Houston Jackson Group, which recruited employees for companies, including Sonitrol (doc. 93, Wright depo., p. 5). Wright testified that Bryant was terminated by Sonitrol on March 24, 2008 for failing to respond to audio activations and glass-break alarms during the burglary of a medical facility. (*id.* at p. 13).

[3] Connor, Plaintiff's expert witness, testified that Bryant's actions rose to the level of gross negligence (doc. 84, Connor depo., p. 155-56).

[4] Fraiche's affidavit (1) states that neither he, nor any one in his family or household staff contacted Sonitrol to inform them that they had recently purchased a grandfather clock which was causing the glass-break detector to sound and requested that neither the couple nor law enforcement should be called in the event that the glass-break detector did sound; (2) makes various statements regarding his expectations of Sonitrol's services (doc. 77, exhibit G).

of other acts to establish Bryant's reckless character to show conformity therewith; (4) the testimony relates to specific instances of Wright's conduct to impeach her credibility (doc. 84). Defendants also assert that the documents supporting Wright's deposition—Bryant's personnel files—are inadmissible because (1) Wright could not properly authenticate them; (2) the documents are hearsay and are not records of regularly conducted business activity; (3) the documents are evidence of subsequent remedial measures; and (4) the probative value of Wright's personnel file is outweighed by the danger of confusing the issues or misleading the jury (doc. 84).

Plaintiffs assert that Wright's deposition testimony and supporting documents are (1) relevant because they establish that Bryant was terminated for conduct similar to the conduct of which Plaintiffs complain and that Wright's credibility is diminished for providing contradictory testimony; (2) admissible because the documents establishing that Bryant was terminated for such conduct were records of regularly conducted business activity and Wright's testimony was necessary and sufficient to authenticate the documents (doc. 93).

Though all relevant evidence is generally admissible, the Federal Rules of Evidence may provide that such evidence be deemed inadmissible. Fed. R. Evid. 402. "Evidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Moreover, "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm

3

less likely to occur, evidence of the subsequent measures is not admissible to prove negligence." Fed. R. Evid. 407.

In addition, under Federal Rule of Evidence 607, "[t]he credibility of a witness may be attacked by any party." However, '"specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). Moreover, it is the responsibility of the trial court to "guard against the improper admission of evidence to prove prior negligence under the guise of impeachment." *Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1011 (5th Cir. 1989).

The Court finds that Wright's deposition testimony and the supporting documents are not admissible. Though Bryant's termination on March 24, 2008—over two months after the Fraiche's house was burglarized—may be relevant, it is barred by the Federal Rules of Evidence. Sonitrol's termination of Bryant is a "subsequent remedial measure" under Federal Rule of Evidence 407. Bryant's termination occurred after the Fraiche's home was burglarized, and—assuming that Bryant had a character for carelessness—had Sonitrol taken action earlier, the Fraiche's injury would have been less likely to occur. Moreover, under Federal Rule of Evidence 404(b), Bryant's failure to respond to a burglary under similar circumstances was an "other act," which Plaintiffs seek to admit in order to prove Bryant's careless character and to establish conformity therewith on the night of January 7, 2008. Lastly, in attempting to admit evidence of Bryant's termination for poor performance in order to impeach the credibility of

4

Bryant and Paula Wagner, Plaintiffs seek to admit "extrinsic evidence" to establish "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness." Therefore, the Court will GRANT Defendant's motion (doc. 84) to strike Wright's deposition testimony and supporting documents.

**Connor affidavit, deposition and expert report**

Defendants assert that Connor's affidavit, deposition and expert report are inadmissible because Conner is not qualified to render expert opinions[5] (doc. 84). Defendants argue that Conner's experience as Chief Burglary detective and supervisor of the East Baton Rouge Parish Sheriff's Office ("EBRPSO") dispatchers does not qualify him to testify as to Sonitrol's practices and procedures (doc. 84). Defendant also asserts that various portions of Connor's testimony be excluded on the basis that they are unreliable and conclusory (doc. 84).

Plaintiffs assert that Connor's experience with the EBRPSO qualifies him to render expert opinions as to Sonitrol's practices and procedures[6] (doc. 93).

---

[5] Defendant asserts that Conner has (1) never worked for an alarm company (doc. 84, Connor depo., p. 86); (2) never been to a central monitoring station (*id.* at p. 90); (3) no certification, training or education in security alarms (*id.* at p. 99); (4) no publications relating to alarm systems (*id.* at p. 99); (5) never testified as an expert on alarm systems or alarm monitoring procedures (*id.* at p. 89); (6) no experience drafting alarm policies or procedures (*id.* at p. 90); (7) no experience training persons on alarm monitoring procedures (*id.* at p. 90); (8) little to no knowledge or experience with the technology used in Defendant's alarm systems (*id.* at pp. 91-94, 97-98); (9) not reviewed the parties' policy (*id.* at pp. 123-24).

[6] Plaintiffs asserts that (1) Connor had a distinguished thirty-year career in law enforcement in which he served as the Chief Burglary detective for the EBRPSO, supervised its dispatch department and investigated hundreds of burglaries (*id.* at pp. 4-5); (2) Connor served as an instructor on burglary for 11 different law enforcement schools (*id.* at p. 5); (3) Connor has knowledge of Sonitrol operations because

Under Federal Rule of Evidence 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Trial courts must perform their "gatekeeping" duty to ensure that all expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Trial courts are imbued with considerable leeway in determining whether or not an individual qualifies as an expert and is capable of providing relevant and reliable testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). As to "reliability," if the proffered testimony is not "scientific," the trial court must determine if the expert has sufficient knowledge, experience, education or training to ensure that the proffered opinions are credible. *Kumho Tire*, 526 U.S. at 150-51. If the expert's opinion is based primarily on experience, the witness must demonstrate (1) the connection between the experience and the conclusion offered, (2) why the experience is an adequate basis for the opinion, and (3) appropriateness of the application of the experience to the facts. Fed. R. Evid. 702 advisory committee's notes.

---

he worked in conjunction with and responded to numerous requests for law enforcement made by Sonitrol dispatchers and attended demonstrations of the Sonitrol system in the 1970's (*id.* at pp. 5-7); (4) Connor has knowledge of alarm systems generally (*id.* at pp. 7-8).

The Court finds that Connor is not qualified to provide expert testimony as to Sonitrol's practices and procedures. Though Connor admittedly has a wealth of experience in law enforcement, and burglaries in particular, this does not qualify him to provide opinions as to the workings of a private, commercial security enterprise. Connor's only experience with Sonitrol arose out of a demonstration he attended in the 1970's and the occasions in which he was alerted of a break-in by Sonitrol employees (doc. 84, Connor depo, pp. 81, 92-93). Moreover, Connor lacks significant experience in the practices and procedures of commercial alarm companies generally[7]. It is telling that, in preparing for his testimony, Connor contacted another alarm company to inquire about its procedures for notifying customers or law enforcement in the event of a suspected break-in and asked "if other alarm companies follow that same procedure" (*id.* at pp. 33-35). Connor also contacted his daughter, who briefly worked for an alarm company, to inquire about its protocols and procedures in order to get "a background of what it's like working in a monitor room" (*id.* at pp. 35-37). Therefore, the court will GRANT Defendant's motion (doc. 84) motion to strike Connor's affidavit, deposition testimony and expert reports.

**Fraiche affidavit**

---

[7] Connor has never (1) worked for an alarm company, designed or installed a home alarm system, or trained individuals in the monitoring of residential security alarms (*id.* at pp. 86, 90); (2) testified as an expert on alarm monitoring services or training of employees (*id.* at p. 86); (3) attended any training courses on the operation of residential security alarms (*id.* at p. 90); or (4) been to an alarm company's central monitoring station (*id.*).

Defendant asserts that various portions of Fraiche's affidavit are inadmissible for a variety of reasons, including that his statements are not relevant and that he lacks personal knowledge of their content.[8]

Plaintiffs claims that Fraiche has personal knowledge of all the statements contained in his affidavit and that Fraiche's expectations of Sonitrol are relevant to determining the standard of conduct applicable to Bryant (doc. 93).

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Moreover, a

---

[8] Defendant asserts that:
- Paragraphs 2 and 3—in which Fraiche claims that he relied on Defendant's advertisements and statements made by Defendant's employees in 2001—are inadmissible because they not relevant and conclusory because they do not state the contents of the advertisements or statements, when they occurred, or where he saw the advertisements and who conveyed the statements (doc. 84). Defendant also claims that the statements made by its employees are hearsay and violate the merger clause contained in the parties' contract (doc. 84).
- Paragraphs 4 and 5—in which Plaintiff states that neither he nor any members of his family or household staff contacted Defendant to inform Defendant that the house contained a grandfather clock which set off the glass break detector and that neither he nor the authorities should not be called in such an event—are inadmissible because Fraiche has no personal knowledge about the actions of others and the statements are conclusory (doc. 84).
- Paragraph 6—in which he states he was under the impression that Defendant would automatically contact him or law enforcement in the event of a glass-break—is inadmissible because he fails to state the basis upon which he arrived at that impression and because his impression violates the terms of the parties' contract (doc. 84).
- Paragraph 8—in which he states it was his "understanding" that his home was safe and would be monitored, and that he would be contacted in the event of a glass-break—is inadmissible because he fails to state the basis upon which he arrived at that understanding (doc. 84).
- Paragraph 10—in which he reiterates that he did not inform Sonitrol not to alert him or law enforcement in the event of a glass break, that he was "shocked" to learn of the incorrect notation and that he "trusted" Sonitrol to monitor his home—is inadmissible because it is not relevant (doc. 84).

witness may not testify to a matter unless the witness has personal knowledge of the matter and can demonstrate that he has such knowledge.  Fed. R. Evid. 602.

The Court finds that paragraphs 2, 3, 6, 8, and 10 should be struck.  In addition, the Court finds that paragraphs 4 and 5 should be struck, in part.  Paragraphs 2 and 3 relate to Defendant's advertising methods and are not relevant to determining whether Bryant was grossly negligent in conducting her duties.  Paragraphs 6, 8 and 10 relate to Plaintiff's "impression[s]" and "understanding[s]" as to the practices and procedures that Sonitrol and its employees would follow in the event of a break-in.  However, Plaintiff's subjective beliefs as to the standard of care that should apply are not relevant to determining the standard of care applicable to Sonitrol and its employees.  Lastly, paragraphs 4 and 5 relate to whether Plaintiffs or members of their family or household staff contacted Sonitrol to request they not be called in the event of a glass-break detection.  Though, Fraiche may testify as to whether or not *he* contacted Sonitrol, he lacks sufficient personal knowledge to testify as to his wife, family members or staff.  As Defendant's point out, he simply could not have monitored each of those individuals, at all times, as would be necessary to testify that none of them contacted Sonitrol.  Therefore, the Court will GRANT Defendant's motion (doc. 84) to strike Fraiche's affidavit as to paragraph's 2, 3, 6, 8, 10 and the portions of paragraphs 4 and 5 which relate to the actions of his family and staff.

## CONCLUSION

Accordingly, the Court hereby GRANTS Defendant's motion to strike (doc. 84), in part, and strikes (1) Sally Wright's deposition testimony and accompanying documents; (2) Don Connor's deposition, affidavit and expert reports; and (3) paragraphs 2, 3, 6, 8, 10 of John Fraiche's affidavit and the portions of paragraphs 4 and 5 which relate to the actions of his family and staff.

Signed in Baton Rouge, Louisiana this 28th day of January, 2011.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**